UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANDREW MICHAEL MANOS,

    Petitioner,

-vs-                                                          Case No. 6:11-cv-1181-Orl-36KRS

SECRETARY, DEPARTMENT
 OF CORRECTIONS, et al.,

    Respondents.
_____/

**ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 7). Petitioner filed a reply to the response (Doc. No. 16).

Petitioner alleges two claims for relief in his habeas petition: 1) trial counsel was ineffective for failing to investigate and convey a plea offer by the State; and 2) the police conducted a custodial interview and interrogation without informing Petitioner of his right to have an attorney and his mother present.

I.      *Procedural History*

Petitioner was charged by information with second degree murder. A jury trial was held, and Petitioner was found guilty of manslaughter with a weapon, a lesser included offense. The trial court adjudicated Petitioner guilty of the offense and sentenced him to imprisonment for a term of thirty years. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*. Petitioner sought discretionary review with the Florida Supreme Court, which granted review, quashed the decision of the Fifth District Court of Appeal, and remanded the case for reconsideration.[1] On remand, the Fifth District Court of Appeal again affirmed Petitioner's judgment and sentence.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, raising two claims. The trial court held an evidentiary hearing on the motion, and then entered an order denying Petitioner's claims. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.

II.     *Legal Standards*

A.      *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

---

[1] The Fifth District Court of Appeal cited to *Franklin v. State*, 877 So. 2d 19 (Fla. 4th DCA 2004) in deciding Petitioner's appeal, which was pending before the Florida Supreme Court at the time of the decision. The Florida Supreme Court ultimately quashed the Fourth District Court of Appeal's underlying *Franklin* decision.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[2] *Id*.

---

[2] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state

3

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B.  *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v.*

---

court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

III.   *Analysis*

A.   *Claim One*

Petitioner contends that trial counsel was ineffective for failing to investigate and convey a plea offer by the State. In particular, he states that there was an "offer for an agreement to 15 years of prison" that was not conveyed to him. *See* Doc. No. 1 at 8. This claim was raised in Petitioners' Rule 3.850 motion and was denied because there had not been such an offer.

An attorney's failure to communicate a plea offer to his client, or to advise his client adequately about the plea offer, may constitute ineffective assistance of counsel. *See*

5

*Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012) (defense counsel has a duty to convey formal plea offers that may be favorable to the accused; however, to show prejudice, a defendant must demonstrate a reasonable probability that he would have accepted a guilty plea and that the trial court would have accepted it); *see also Osorio v. Conway*, 496 F. Supp. 2d 285, 303 (S.D.N.Y. 2007). In order to prevail on such a claim, the petitioner must demonstrate that 1) the attorney failed to communicate a plea offer or provide adequate advice about the plea and sentencing exposure, and 2) there is a reasonable probability that, but for the attorney's deficient performance, the petitioner would have accepted the plea offer. *Osorio*, 496 F. Supp. 2d at 303.

Here, Petitioner was present before the trial court prior to the commencement of jury selection. The trial court sought to determine if the case could be resolved without a trial, and a lengthy conference was held on the matter. The State recited its offer to reduce the charge to manslaughter with a weapon, which would reclassify the charge to a first degree felony, and to leave the sentencing "up to the court." *See* Appendix A at 4. Under that scenario, the lowest permissible guideline sentence would have been 10.375 years and the maximum sentence would have been 30 years. *Id*. at 5. The State made no offer whatsoever as to the sentence.

Throughout the conference, Petitioner and his attorney expressed concern over the lack of certainty with regard to the sentence. For example, Petitioner stated that "I'm not-- it's not predetermined how it's going to turn out. I feel if I accept that offer, that it's not going to turn out the way I want to. I think I would have better chances to just take it to

trial . . . ." *Id*. at 26.  At one point, the trial court asked if Petitioner would accept a "15-year cap," and Petitioner's counsel stated that Petitioner "would accept that plea." *Id*. at 46. Petitioner also stated his willingness to accept a sentence of 15 years. *Id*. at 48. However, when asked whether such a proposal would be acceptable, the prosecutor informed the trial court that "[t]hat's not my authority Your Honor" and that "[m]y hands are tied. That's the problem." *Id*. at 49, 51.

Petitioner was present throughout the entire plea negotiation conference, and all discussions were in open court and on the record. The discussion throughout the hearing focused on the application of the sentencing guidelines to the three alternative charges-- Second Degree Murder, Manslaughter With a Weapon, and Manslaughter Without a Weapon. The record does not reflect that the State ever expressly offered a sentence of 15 years in return for Petitioner's plea to any of the three possible charges.

The prosecutor emphatically stated that he had no authority to offer a 15-year cap. The trial court suggested a 15-year cap "conditioned upon [the trial court] being able to live with that," and Petitioner declined a "conditional plea with the 15-year cap." *Id*. at 52-53.[4] Clearly, the record supports the trial court's finding that the State never offered to cap Petitioner's sentence at 15 years.

As such, Petitioner has not shown that his attorney failed to communicate a plea offer or to adequately advise Petitioner about the plea offer. Likewise, even assuming that

---

[4]Although Petitioner states that the prosecutor at one point mentioned in passing that he had discussed with his superiors "an agreement to 15 years prison," the prosecutor adamantly denied that he had the authority to agree to such a sentence.

counsel acted deficiently, Petitioner has not demonstrated that there is a reasonable probability that, but for the attorney's deficient performance, he would have accepted the plea offer. Consequently, there has been no showing that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.

B.   *Claim Two*

Petitioner states that the police conducted a custodial interview and interrogation without informing Petitioner of his right to have an attorney and his mother present.

This claim was not raised in the state courts, and, therefore, it is procedurally barred. There are two exceptions to the procedural default bar. The first is the "cause and prejudice" exception;[5] the second, which is a narrow one, is the "actually innocent" exception, also known as the "fundamental miscarriage of justice" exception, used in extraordinary circumstances. *See Johnson v. Singletary*, 938 F.2d 1166, 1174-75 (11th Cir. 1991).

In the present case, Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. The entire record has been reviewed, and the Court

---

[5]*See Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("when a procedural default bars state litigation of a court claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice."); *see also Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992) (the petitioner must demonstrate cause and prejudice for failing to raise instances of ineffective assistance of counsel with the state court).

concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, this claim is procedurally barred and is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Andrew Michael Manos is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[6] Accordingly, a Certificate of Appealability is **DENIED** in this case.

---

[6]Pursuant to Rule 11 of the *Rules Governing Section 2254 Cases In the United States District Courts*,

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 22, 2012.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-2 10/22
Counsel of Record
Andrew Michael Manos